**2012 ME 68**

**STATE of Maine**

v.

**Peter C. DeGENNARO.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 26, 2012.
Decided: May 24, 2012.

Peter J. Cyr, Esq., Law Offices of Peter J. Cyr, Portland, for appellant Peter C. DeGennaro.

Stephanie Anderson, District Attorney, and Robert L. Ellis, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]  Peter C. DeGennaro appeals from a judgment of conviction entered by the Superior Court (Cumberland County, *Wheeler, J.*) following a jury-waived trial at which it found DeGennaro guilty on an indictment charging him with theft by unauthorized taking or transfer (Class B), 17-A M.R.S. § 353(1)(B)(1) (2011).[1]  DeGennaro contends that the evidence was insufficient as a matter of law to support the court's finding that he unlawfully controlled "the property of another," *see id.,* and insufficient as a matter of fact to support the court's finding concerning his intent.  We conclude, pursuant to the consolidation section of the statutory chapter setting out theft offenses, 17-A M.R.S. § 351 (2011),[2] that the evidence was sufficient to support a finding that DeGennaro was guilty of theft by deception, 17-A M.R.S. § 354(1)(B)(1) (2011),[3] and on that basis we affirm the judgment.

## I.  FACTS

■■■ [¶ 2]  When a criminal defendant challenges the sufficiency of the evidence, we view the evidence and inferences that may be drawn from it in the light most favorable to the trial court's judgment to determine whether the court rationally could find each element of the offense beyond a reasonable doubt.  *State v. McLaughlin,* 2009 ME 90, ¶ 8, 977 A.2d 1008; *see State v. Schmidt,* 2008 ME 151, ¶¶ 19, 21, 957 A.2d 80 (stating that the fact-finder is permitted to draw all reasonable inferences from the evidence, and that "intent can be inferred from the evidence").  The court's factual findings are reviewed for clear error; in this case we have reviewed the record and find none. *See State v. Christian,* 2012 ME 51, ¶ 7, 40 A.3d 938.

[¶ 3]  In October 2007, Robert and Cynthia Bettencourt decided to build a garage including a home office next to their home in South Portland.  About a week after the project was approved by the planning board they received a call from Peter DeGennaro, who congratulated them on receiving approval and indicated that because his proposal to the board had not been approved, he was available to work on their garage.  DeGennaro, who operat-

1. Title 17-A M.R.S. § 353(1)(B)(1) (2011) provides:
   1.  A person is guilty of theft if:
   A.  The person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property....
   B.  The person violates paragraph A and:
   (1) The value of the property is more than $10,000.  Violation of this subparagraph is a Class B crime[.]

2. Title 17-A M.R.S. § 351 (2011) provides:
   Conduct denominated theft in this chapter constitutes a single crime embracing the separate crimes such as those heretofore known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property.  An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint, information or indictment, subject only to the power of the court to ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or by surprise.  If the evidence is sufficient to permit a finding of guilt of theft in more than one manner, no election among those manners is required.

3. Title 17-A M.R.S. § 354(1)(B)(1) (2011) provides:
   1.  A person is guilty of theft if:
   A.  The person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property....
   B.  The person violates paragraph A and:
   (1) The value of the property is more than $10,000.  Violation of this subparagraph is a Class B crime[.]

ed a general contracting business called Caldi Builders, met with the Bettencourts two or three times to discuss the project.

[¶ 4] The parties reached an agreement and signed a contract on November 10, 2007, calling for DeGennaro to build the garage and office for $40,900. The Bettencourts were to pay for the project in seven installments, the first due at signing and the remaining payments due as specified milestones were reached. Construction was to be completed on or about February 24, 2008. As to any subcontractors DeGennaro elected to employ, the contract called for him to "fully pay said subcontractor[s] and in all instances remain responsible for the proper completion of this contract," and specified that he "shall be responsible for making all and full payments to any and all Subcontractors, engaged by the Contractor, in a timely manner agreed between them."

[¶ 5] On November 28, the Bettencourts agreed to a "change order" adding a bathroom to the project for an additional $7900. They wrote two checks to Caldi Builders in the course of their dealings with DeGennaro, one on November 11 for $6500, representing the first payment due upon signing the contract, and the second on November 28 for $18,300, representing the second and third installments due under the contract plus the amount due under the change order, for a total of $24,800.

[¶ 6] DeGennaro had three subcontractors performing excavation and concrete work on the project. In the approximately one month he acted as the general contractor, he wrote the subcontractors four checks drawn on two different accounts: three checks totaling $3600 from Caldi Builders' account at Saco & Biddeford Savings, and one check for $3800 from a personal account at Sovereign Bank. When one of the subcontractors called Sovereign Bank, he learned that DeGennaro's ac-

count did not have sufficient funds to cover the $3800 check; later, after DeGennaro was fired from the project, the check was deposited and returned for insufficient funds.

[¶ 7] A subcontractor approached Robert Bettencourt to let him know that the bank would not honor the $3800 check. Bettencourt spoke to DeGennaro about the check three times over the next few days. The first time DeGennaro said it was just a misunderstanding; the second time he said that the subcontractors were running an embezzlement scam; and the third time he said the disputed check was not even intended for the Bettencourt project. He told Bettencourt that the subcontractors "were all crazy and they were liars." At some point DeGennaro stopped returning Bettencourt's calls and messages. Bettencourt met with the subcontractors on December 11 concerning the problems on the project. By that time Bettencourt had informed DeGennaro that he believed DeGennaro had breached the contract and that he wanted his money back. DeGennaro accused Bettencourt of threatening him and refused to return any of the $24,800 Bettencourt had paid Caldi Builders. The court found that at that point DeGennaro retained more than $10,000 in excess of his legitimate labor and expenditures.

[¶ 8] Concerned with what the subcontractors told him about the effect of cold weather on the poured and exposed concrete, Bettencourt became the de facto general contractor and worked out agreements with the subcontractors to finish their portion of the work. In connection with those agreements he wrote five checks to the subcontractors totaling $7050. Bettencourt contacted the Attorney General's Office in an attempt to mediate the dispute with DeGennaro, and eventually reported the incident to the South Portland Police Department.

[¶ 9] In August 2008, DeGennaro was indicted on one count of theft by unauthorized taking or transfer; the indictment alleged that he exercised unauthorized control over money belonging to the Bettencourts in excess of $10,000. DeGennaro's first trial ended in a mistrial due to a discovery issue. At his second trial the court found him guilty. DeGennaro filed motions for a new trial and for a judgment of acquittal; the motions were denied at a hearing and the case was continued for sentencing. At the sentencing hearing the court heard DeGennaro's renewed motions for a new trial and for a judgment of acquittal and again denied both motions. The court entered judgment and sentenced DeGennaro to seven years' imprisonment, concurrent with sentences he was serving in Massachusetts for similar conduct, and payment of $24,900 in restitution. DeGennaro's application for leave to appeal from sentence was denied, and this appeal followed.

## II. DISCUSSION

■ [¶ 10] DeGennaro contends that the evidence was insufficient to sustain the court's verdict as a matter of law because the $24,800 the Bettencourts paid him was his sole property once he received it, and therefore was not "the property of another"[4] within the meaning of 17–A M.R.S. § 353(1)(A) when he allegedly failed to pay the subcontractors as required by the contract. Because that is so, he argues, he is potentially liable in a breach of contract action, but is not criminally liable for theft.

[¶ 11] We reject DeGennaro's argument because, on the facts of this case, it focuses on the wrong moment in time, and ignores the trial court's critical factual findings that DeGennaro "*never* intended to make good on the $3800 check," and "never intended to complete the garage, home office or bathroom for the Bettencourts even though the Bettencourts paid him $24,800 towards the job." As with the court's other factual findings, we review the findings regarding DeGennaro's intent for clear error and, in light of this record, find none. *See Schmidt*, 2008 ME 151, ¶ 21, 957 A.2d 80 ("intent can be inferred from the evidence"); *State v. Ilsley*, 595 A.2d 421, 423–24 (Me.1991); *State v. Foster*, 566 A.2d 1084, 1086 (Me.1989) (stating that "[w]hether a defendant possessed the requisite intent to commit a crime is a question for the trier of fact" reviewed for clear error).

[¶ 12] Pursuant to the consolidation section of Title 17–A, chapter 15, "An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the ... indictment...." 17–A M.R.S. § 351. Thus, the charge in the indictment that DeGennaro committed theft by unauthorized taking in violation of section 353 was also a charge that he committed "any other theft offense under Chapter 15 of the Criminal Code that the evidence supported." *State v. Laplante*, 534 A.2d 959, 965 (Me.1987); *see State v. Fox*, 494 A.2d 177, 179 (Me.1985) (affirming trial court's finding that defendant was guilty of theft of lost, mislaid, or mistakenly delivered property when he had been charged with theft by receiving stolen

---

4. The applicable statute defines "property of another" as

property in which any person or government other than the actor has an interest that the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property.... Property in

the possession of the actor may not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement. 17–A M.R.S. § 352(4) (2011).

property); *State v. Liberty*, 478 A.2d 1112, 1115–16 (Me.1984) (stating that, notwithstanding the language of the indictment, conviction for burglary was supportable unless the jury could not have found "any type of theft set forth in … [chapter] 15"); *State v. Brasslett*, 451 A.2d 890, 894 (Me.1982) (stating that an alleged violation of section 353 "will support evidentiary proof of theft in any other manner described by the several separate provisions of the Code relating to the crime of theft"); *State v. Rand*, 430 A.2d 808, 815 (Me.1981) (stating that pursuant to the consolidation section, "a specific allegation of theft by unauthorized taking pursuant to [section] 353 will support evidentiary proof of theft by receiving and vice versa").

[¶ 13] Applying section 351 to the trial court's factual findings in this case, we conclude that the evidence establishes beyond a reasonable doubt that DeGennaro committed theft by deception (Class B), 17–A M.R.S. § 354(1)(B)(1).[5] *See Brasslett*, 451 A.2d at 896 (concluding that "no fatal variance exists between a charge of theft by unlawful taking and proof of the charge by evidence of taking through deceitful means with the concomitant intention of depriving the owner of his property"). Pursuant to statute, "de-

ception occurs when a person intentionally … [c]reates or reinforces an impression that is false and that the person does not believe to be true, including false impressions as to … intention or other state of mind[.]" 17–A M.R.S. § 354(2)(A) (2011). Here, at the moment DeGennaro took the Bettencourts' money intending not to fulfill the contract, he (1) obtained control of their property, (2) as a result of deception—the deception being his intentionally-created false impression that he intended to complete the project, *see id.*, (3) with the intent to deprive them of the property. *See* 17–A M.R.S. § 354(1)(B)(1).

■ [¶ 14] In *State v. McLaughlin*, we specifically did not address the question of "whether or not a person commits a theft by deception if that person receives an item as a result of a promise of future payment or performance of services, but, upon receipt of the item, does not plan to pay or perform." 2009 ME 90, ¶ 24 n. 1, 977 A.2d 1008. We now address that issue and hold that the crime of theft by deception occurs when a person accepts money pursuant to a contract with the present intent to not perform what the contract requires, but to instead keep the money for some unauthorized purpose.[6] Whether

---

5. The trial court found, and the State urges us to accept on appeal, that DeGennaro was guilty of theft by unauthorized taking or transfer, 17–A M.R.S. § 353, on the authority of *State v. Schmidt*, 2008 ME 151, 957 A.2d 80. We conclude that *Schmidt* does not control the result here because in that case Schmidt received a loan from the City of Calais to be used for one specific purpose, namely materials and labor to complete the renovation of a building that his foundation had purchased, but instead he "misused the money" by paying himself and his girlfriend unauthorized salaries, "purposes not approved by the City." *Id.* ¶¶ 4, 21. Because Schmidt was only allowed to use the money for building renovation, the interest that the City retained to have the loaned funds used for a legitimate purpose was infringed when

they were used for another, wholly unapproved purpose, *see* 17–A M.R.S. § 352(4). Here, although the contract required DeGennaro to pay any subcontractors that he employed as part of his overall obligation to complete the project, the monies paid to him by the Bettencourts at the point that he was fired were not specifically dedicated to that purpose, but rather could have been used, without breaching the contract, for any legitimate purpose. Accordingly, DeGennaro's failure to use the Bettencourts' payments to pay the subcontractors did not implicate their interest in the funds in the same way that the City's interest was implicated in *Schmidt*.

6. Although he acknowledges that it is not precisely on point, DeGennaro argues that

a theft by deception occurred in a particular case is a fact-specific question; however, we have no difficulty in concluding that the elements of that crime are satisfied on this record.

The entry is:

Judgment affirmed.

*State v. Nelson*, 1998 ME 183, 714 A.2d 832, is analogous to the facts of this case and leads to a conclusion that he did not exercise control over "the property of another" within the meaning of section 353. In *Nelson*, a case where the defendant was charged with a violation of section 353 after contracting to harvest timber and then failing to pay the landowners, we held that no criminal conduct occurred because the State failed to prove the element that the defendant exercised control over "the property of another." *Id.* ¶¶ 2, 5. We did not reach the question of whether the defendant ever intended to pay the landowners, and thus did not consider whether the timber was "the property of another" for purposes of section 353 at the moment the contracts were signed. Although our holding today calls the continuing vitality of *Nelson* into question, we need not reach that issue now.