MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2020 ME 82
Docket:       Cum-19-259
Argued:       March 2, 2020
Decided:      June 4, 2020
Revised:      December 31, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.*

STATE OF MAINE

v.

GREGORY P. MCLAUGHLIN

HUMPHREY, J.

[¶1]  Gregory P. McLaughlin appeals from a judgment of conviction of one count of Class B theft by deception, 17-A M.R.S. § 354(1)(B)(1) (2020), and one count of Class C theft by deception, 17-A M.R.S. § 354(1)(B)(6) (2020), entered by the court (Cumberland County, *Warren, J.*) after a jury trial.  McLaughlin contends that the court erred in failing to include a "nexus" element in its instruction to the jury on the charge of theft by deception.  He also contends that the evidence was insufficient to convict him of theft by deception, and that his actions constituted a breach of contract, not a criminal offense.  We affirm the judgment.

---

* Although Chief Justice Saufley participated in this appeal, she resigned before this opinion was certified.

[¶2]  The State purports to cross-appeal, challenging the trial court's merger of the two charges of theft by deception for sentencing purposes and the legality of the sentence that it imposed.  We do not reach the State's challenges because the State failed to file a notice of appeal and provide a written authorization of the Attorney General.  *See State v. Mullen*, 2020 ME 56, ¶ 25, --- A.3d ---; *see also* 15 M.R.S. § 2115-A(3), (5) (2020); M.R. App. P. 2A(f)(2), 21(a)-(c).

## I.  BACKGROUND

[¶3]  Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Ouellette*, 2019 ME 75, ¶ 2, 208 A.3d 399.

[¶4]  The victims, a married couple, sought to convert a finished camp property on Sebago Lake into their full-time residence.  In August 2016, the victims met McLaughlin, described their plans for renovating the Sebago Lake property, and told him that they had not yet found a contractor for their project. McLaughlin represented himself as a general contractor, agreed to take a look at their plans, and said that he would be available in a few weeks.  During later conversations about the project, McLaughlin held himself out as having twenty years of building experience, a team of four to five carpenters who were

available to work at the job site every day, and the ability to procure the services of electricians, plumbers, and excavators.

[¶5] In early December 2016, satisfied that McLaughlin would be able to renovate the property in their desired timeframe, the victims contracted with McLaughlin to do various construction and installation work on their property with a completion date of June 15, 2017. The contract called for an initial payment of $10,600, followed by payments of $4,040 on the first and fifteenth of each month, and a final payment of $4,040 upon completion.

[¶6] Initially, McLaughlin worked full days at the victims' property nearly every business day. Over time, McLaughlin's appearance at the work site became inconsistent and he worked fewer and fewer hours. In late January or early February 2017, the victims and McLaughlin entered into a revised contract with a new completion date of July 1, 2017, because the work could not be completed by June 15.[1] In March, it became clear that McLaughlin would not be able to meet the July 1 deadline. On March 15, 2017, the victims and McLaughlin agreed on a new schedule, with a completion date of August 20, 2017, and more specific timelines for completing various phases of the project.

---

[1] The revised contract also contained adjustments to labor costs, allowances, and the payment schedule based on the later completion date and to reflect amounts already paid under the contract, but the substance of the work McLaughlin was to perform remained the same.

McLaughlin's hours continued to decline, first to approximately three days, totaling twenty-five hours, per week, then to two days per week, and, finally, to just a few hours on a single day each week. At no point did McLaughlin procure the work crew or subcontractors that he had represented would be available to work on the project.

[¶7] The victims fired McLaughlin on June 27, 2017. By that time, he had completed, at most, about twenty percent of the project, and the victims had paid him approximately $80,000 for labor and materials. Of that sum, the victims paid McLaughlin $10,631 for certain materials, including rough plumbing materials, trusses, a joist, and other general building materials, which he never delivered. The work that McLaughlin did complete was inconsistent with the original building plan, was not structurally sound, violated local building codes, and would not have passed a building inspection. As a result, the victims had to remove all of McLaughlin's work and restart the project from scratch.

[¶8] McLaughlin was initially charged by indictment on February 9, 2018, with one count of theft by unauthorized taking (Class B), 17-A M.R.S. § 353(1)(B)(1) (2020), one count of home repair fraud (Class D), 17-A M.R.S.

§ 908(1)(D) (2020), and one count of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2020).

[¶9]  A superseding indictment was filed on August 10, 2018, charging McLaughlin with one count of theft by deception (Class B), 17-A M.R.S. § 354(1)(B)(1), one count of theft by deception (Class C), 17-A M.R.S. § 354(1)(B)(6), and one count of home repair fraud (Class D), 17-A M.R.S. § 908(1)(D). McLaughlin entered a plea of not guilty to each charge at his arraignment, and the case proceeded to trial in March 2019.

[¶10]  At the close of the State's evidence, McLaughlin moved for a judgment of acquittal on the two theft by deception counts.  *See* M.R.U. Crim. P. 29(a).  McLaughlin argued that the State did not prove that he had the requisite "intent to deprive" the victims of their property at the time of the initial deception.  *See* 17-A M.R.S. § 354(1)(B)(1).  The court denied the motion.

[¶11]  The court then provided the jurors with instructions concerning the offenses of theft by deception and home construction or repair fraud. McLaughlin did not object to these jury instructions or request any additional instructions.

6

[¶12] McLaughlin was found guilty of both counts of theft by deception.[2] On the Class D home repair fraud charge, the court declared a mistrial because the jury was unable to reach a verdict.

[¶13] McLaughlin filed a motion for a new trial, M.R.U. Crim. P. 33, arguing that "[t]he court erred in declining to provide [an] additional [jury] instruction regarding nexus between intent to deceive and intent to deprive." Prior to sentencing, the court held a hearing on McLaughlin's motion. McLaughlin conceded that "there was no specific request for an instruction" regarding a "nexus" between the between the deception and the intent to deprive the victims of their property. The court denied McLaughlin's motion.

[¶14] For sentencing purposes, the court merged the two counts of theft by deception over the State's objection and entered judgment against McLaughlin. McLaughlin received a sentence of seven years' imprisonment, all but two years suspended, and three years of probation. He was also ordered to

---

[2] With respect to the Class B count, the jury found beyond a reasonable doubt that the State proved the basic elements of theft by deception and that the value of the amount obtained was over $10,000. 17-A M.R.S. § 354(1)(B)(1) (2020). The Class C charge was based on the same underlying conduct as the Class B charge but, rather than requiring proof that the amount obtained was over $10,000, instead required the State to prove that McLaughlin had two or more prior convictions for an enumerated offense or offenses. *Id.* § 354(1)(B)(6) (2020). Before trial, McLaughlin stipulated that he had two or more previous convictions for theft and forgery. *See id.* Because the jury found that the State proved the basic elements of theft by deception beyond a reasonable doubt and McLaughlin stipulated that he had at least two prior convictions for theft and forgery, the court found McLaughlin guilty on the Class C count. *Id.*

pay $10,000 restitution to the victims and $35 to the Victims' Compensation Fund, *see* 5 M.R.S. § 3360-I (2020).

[¶15] McLaughlin timely appealed from the court's judgment.[3]

## II. DISCUSSION

A. Merger of the Theft by Deception Counts at Sentencing

[¶16] The State argues that it was improper for the trial court to merge the two theft by deception charges for sentencing purposes and that the sentence imposed with respect to the Class C theft by deception count was unlawful. The State acknowledges that it did not appeal from the judgment but contends that it was not required to do so. *See* 15 M.R.S. § 2115-A (2020). The State is correct; it is not required to appeal when the defendant appeals. However, if it does not appeal, the State is limited to arguing that error "harmful to it" occurred prior to trial or during trial. 15 M.R.S. § 2115-A(3); *see Ouellette*, 2019 ME 75, ¶ 16, 208 A.3d 399.

[¶17] Because the State's arguments relate to alleged post-trial sentencing errors, the State was required to appeal to raise them.[4] *Ouellette*,

---

[3] McLaughlin also applied for leave to appeal his sentence, but the Sentence Review Panel denied his application. *See State v. McLaughlin*, No. SRP-19-274 (Me. Sent. Rev. Panel Aug. 7, 2019); *see also* 15 M.R.S. § 2151 (2020); M.R. App. P. 20.

[4] The State also did not file a motion for correction or reduction of sentence pursuant to M.R.U. Crim. P. 35. *See* 15 M.R.S. § 2115(2-B) (2020). Thus, even if the State had properly filed a notice of

2019 ME 75, ¶ 16, 208 A.3d 399.  It failed to do so, and we therefore do not reach the State's claims of error related to sentencing.  *See Mullen*, 2020 ME 56, ¶¶ 23-25, --- A.3d ---; *see also* 15 M.R.S. § 2115-A(3), (5); M.R. App. P. 2A(f)(2), 21(a)-(c).

B.      Sufficiency of the Evidence

[¶18]  McLaughlin argues that the evidence was insufficient for the jury to find beyond a reasonable doubt that he committed theft by deception because the State did not establish that the statutorily required elements of deception and an intent to deprive the victims of their money or property, *see* 17-A M.R.S. § 354 (2020), existed at the same time.  McLaughlin refers to this as the "nexus" requirement.

[¶19]  When a defendant challenges the sufficiency of the evidence upon conviction after a jury trial, we examine the evidence in the light most favorable to the State to determine whether the jury could rationally find every element of the offense beyond a reasonable doubt.  *See State v. Hayward*, 2017 ME 33, ¶ 10, 156 A.3d 734.  The jury is free to "draw all reasonable inferences from the evidence, and exclusively decides the weight to be given to the evidence and the

---

appeal and obtained the Attorney General's approval, *id.* § 2115(5), it is not clear that the State would have had any statutory basis for an appeal of the sentence.

credibility to be afforded to the witnesses." *Id.* (alteration omitted) (quotation marks omitted); *see also State v. Hall*, 2019 ME 126, ¶ 16, 214 A.3d 19. "[I]ntent is seldom capable of direct proof. It is usually inferred from the proven surrounding circumstances." *State v. Berube*, 185 A.2d 900, 902 (Me. 1962); *see also* Alexander, *Maine Jury Instruction Manual* § 6-39 at 6-77 (2019-20 ed. 2019).

[¶20] The crime of theft by deception occurs when a "person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property." 17-A M.R.S. § 354(1)(A). "[D]eception occurs when a person intentionally . . . [c]reates or reinforces an impression that is false and that the person does not believe to be true, including . . . false impressions as to . . . knowledge, opinion, intention or other state of mind." *Id.* § 354(2)(A). But "an intention not to perform a promise, or knowledge that a promise will not be performed, may not be inferred from the fact *alone* that the promise was not performed." *Id.* (emphasis added). Deception also occurs "when a person intentionally . . . [f]ails to correct an impression that is false and that the person does not believe to be true and that . . . [t]he person had previously created or reinforced." *Id.* § 354(2)(B).

"Whether a theft by deception occurred in a particular case is a fact-specific question." *State v. DeGennaro*, 2012 ME 68, ¶ 14, 46 A.3d 1147.

[¶21]  The jury rationally could have found beyond a reasonable doubt each element of theft by deception based on the testimonial and documentary evidence presented at trial and reasonable inferences drawn therefrom.  *See Hayward*, 2017 ME 33, ¶ 10, 156 A.3d 734.  The victims testified that

- McLaughlin held himself out as a highly experienced contractor who had a team of laborers at his disposal and the ability to secure various subcontractors to assist in completing the project, and that they would not have hired him but for these representations;

- They never observed any work crew at the site and McLaughlin never hired any subcontractors;

- Although McLaughlin's work was satisfactory at first, the number of hours he spent at the work site progressively decreased over a period of several months until, by the time he was fired in June 2017, he was working only three or four hours per week;

- The contract was renegotiated twice because McLaughlin was not making adequate progress and could not complete the work on time;

- When pressed about the lack of progress or the quality of his work, McLaughlin brushed off the victims' concerns and made excuses;

- When McLaughlin was fired at the end of June 2017, they had paid him roughly $37,000 for his labor, but he had completed, at most, twenty percent of the work; and

- They paid McLaughlin $10,631 for various materials that they never received, including rough plumbing materials, trusses, a joist, and other general building materials.

Other witnesses for the State, including the Town of Standish's code enforcement officer, testified that the work McLaughlin did complete was not only inconsistent with the original building plan, but had to be torn down because it was not structurally sound and violated local building codes.[5]

[¶22]    Contrary to McLaughlin's argument, the record evidence is sufficient for the jury to have found that McLaughlin's deception was contemporaneous with the intent to deprive at some point. On this evidence, the jury rationally could have inferred that McLaughlin both deceived the victims about his intent to perform and intended to deprive them of their money all along.[6] *See* 17-A M.R.S. § 354(2)(A); *Degennaro*, 2012 ME 68, ¶¶ 11, 13-14, 46 A.3d 1147. Alternatively, the jury could have found that McLaughlin deceived the victims with respect to his ability to perform the work—i.e., his knowledge of home construction, the existence of his team of laborers, and his ability to retain subcontractors—to secure the contract, and, although he may have initially intended to do the work, he developed the intent to deprive later,

---

[5] Many photos of the work site were admitted in evidence for the jury's consideration.

[6] McLaughlin contends that the jury could not rationally have found that he deceived the victims at the time they entered into the December 2016 contract because that was an element of the home construction or repair fraud charge on which the jury was unable to reach a verdict. *See* 17-A M.R.S. § 908(1)(D) (2020). However, inconsistent verdicts on separate counts of an indictment will not invalidate a guilty verdict. *See State v. Lowe*, 2015 ME 124, ¶¶ 28-30, 124 A.3d 156; *State v. Finnemore*, 1997 ME 44, ¶¶ 7-9, 690 A.2d 979.

showing up at the work site periodically as part of a ruse designed to ensure that the victims continued to pay him. *See* 17-A M.R.S. § 354(2)(B); *State v. Brasslett*, 451 A.2d 890, 895 (Me. 1982). Or the jury could have simply inferred that he deceived the victims with respect to those materials that were never delivered and accepted the payments for those materials, totaling $10,631, with the intent not to purchase or deliver the materials, but to instead keep the money.[7] *See Degennaro*, 2012 ME 68, ¶¶ 11, 13-14, 46 A.3d 1147. We need not determine which inferences the jury drew or whether it could have drawn others; we are concerned only with whether the verdict was supported by sufficient evidence. *See State v. Manion*, 112 A.3d 506, 521 (Md. 2015). We conclude that it was.

[¶23] McLaughlin's final contention on this issue is that his actions constituted a mere breach of contract, not a criminal theft by deception. A similar argument was raised in *Degennaro*, 2012 ME 68, ¶ 10, 46 A.3d 1147, and our holding in that case forecloses any argument that a theft by deception cannot occur where there is a contract between the parties, *see id.* ¶ 14. Even

---

[7] Although we conduct our own review of the sufficiency of the evidence, McLaughlin conceded at the hearing on his motion for a new trial that the jury could have found him guilty of theft by deception on the evidence presented. He also conceded that the jury could have found him guilty of theft by unauthorized taking. *See* 17-A M.R.S. § 351 (2020).

if we assume that McLaughlin's initial representations about his ability to complete the work were mere "puffery," exaggerating or overselling his ability to convince the victims to hire him, *see, e.g., United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 836 N.W.2d 807, 815-16 (Wis. 2013), the evidence in the record is sufficient to support the jury's verdict.[8]

## C.    Jury Instructions

[¶24]    McLaughlin contends that he requested a jury instruction regarding the nexus between the deception and the intent to deprive, and that the court's failure to give such an instruction constitutes prejudicial error.

[¶25]  McLaughlin neither requested a jury instruction on this issue nor objected to the jury instructions that were given, even though he had multiple opportunities to do so.[9]    McLaughlin affirmatively agreed to the jury

---

[8]   Of course, the jury could have found that McLaughlin's initial representations of his qualifications and knowledge of home construction were not puffery and rose to the level of deception.  *See* 17-A M.R.S. § 354(2)(A) (2020).

[9]  At the hearing on his motion for a new trial, McLaughlin conceded that "there was no specific request for an instruction."  However, McLaughlin also contends that he requested this instruction at some point during a discussion in chambers that took place off the record.  Both cannot be true. Either he requested the instruction or he did not.  When this issue came up during the hearing on McLaughlin's motion for a new trial, neither the court nor the attorney for the State had any recollection of a request for this instruction having been made off the record.  We are limited to reviewing the record in front of us, and we decline to assume that the issue was preserved in the face of McLaughlin's on-the-record admission that he did not request the instruction and in the absence of any indication elsewhere in the record that he requested it.  *See State v. King*, 2015 ME 41, ¶ 4, 114 A.3d 664; Alexander, *Maine Appellate Practice* § 5.2 at 96 (5th ed. 2018).

instructions, thereby waiving his ability to challenge them on appeal.[10]

*See State v. Miller*, 2018 ME 112, ¶ 14 n.6, 191 A.3d 356; *see also* 17-A M.R.S. § 101(1) (2020); M.R.U. Crim. P. 51; *State v. Nobles*, 2018 ME 26, ¶¶ 34-35, 179 A.3d 910; *State v. Ford*, 2013 ME 96, ¶ 15, 82 A.3d 75; *State v. Cleaves*, 2005 ME 67, ¶¶ 7-8, 15, 874 A.2d 872.

The entry is:

Judgment affirmed.

Valerie A. Randall, Esq. (orally), Hanly Law, Portland, for appellant Gregory McLaughlin

Jonathan Sahrbeck, District Attorney, and Carlos Diaz, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2018-678
FOR CLERK REFERENCE ONLY

---

[10] Having reviewed the court's written and oral instructions, we are satisfied that they "fairly and accurately informed the jury of all necessary elements of the governing law." *State v. Lajoie*, 2017 ME 8, ¶ 18, 154 A.3d 132.